## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAZARIO BURGOS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-2497 |
| | : | |
| MARY CANINO, et al., | : | |
| Defendants. | : | |

### MEMORANDUM

In this *pro se* action, Nazario Burgos, a prisoner in a Pennsylvania correctional

institution, brings claims against defendants David DiGuglielmo, Mary Canino, Levi Hosband,

Tony Wolfe, CO III Day, CO I Cuddeback, Adriano Carrete, Lieutenant Smith, Scott Davies,

Lieutenant M. Doyle, Kyungkuk Cho and Michael Barrata, alleging violations of his

constitutional rights under 42 U.S.C. §§ 1983, 1985, and 1986.  Specifically, the complaint

alleges that prison officials retaliated against him because he exercised his constitutional right to

file grievances and civil suits on behalf of himself and other inmates, alleging improper treatment

within the prison facility.  Before me are the defendants' motions for summary judgment.

## I. BACKGROUND[1]

Nazario Burgos is currently incarcerated at the State Correctional Institution at Graterford

("SCIG") in Graterford, Pennsylvania.  Burgos actively assisted fellow inmates in preparing and

filing criminal appeals, civil suits, and grievances against prison officials.  He claims that the

---

[1]The facts are stated in the light most favorable to Burgos, the non-moving party, with all
justifiable inferences drawn in his favor.

following sequence of actions were taken in retaliation for his active involvement in court-related matters:

On April 19, 2006, SCIG internal security staff members received report of the smell of marijuana near Burgos' cell. (Dohman Decl. ¶ 5.) Intelligence Captain Dohman, according to general prison practice, ordered all inmates in the immediate area to provide an investigative urine sample. (Dohman Decl. ¶ 4, Knauer ¶ 4.) Burgos was one of the inmates required to give an investigative urine sample. (Davies Decl. ¶ 6.) Burgos asserts that Davies threatened to issue him a misconduct report if he refused to comply. In his declaration, Davies explained that he followed general prison practice when taking the urine sample, ensuring that the specimen met the appropriate temperature and claims that he followed proper procedure in sealing the urine specimen to prevent tampering. (Davies Decl. ¶¶ 3, 11, 12, 13.) Officers ordered seven other inmates in addition to Burgos to provide urine samples.

On April 27, 2006, Sterling Laboratories ("Sterling"), the company responsible for conducting the urinalysis testing, reported that Burgos' urine sample tested positive for tetrahydrocannabinol ("THC"), the psychoactive element in marijuana. (Ex. D5-3.) Burgos maintains that the test reported a false positive and that he is not guilty of drug use. As a result of the positive test result, Burgos received a disciplinary misconduct report for drug use. (Exs. A-1, D5-1.) That same day, Burgos was transferred to SCIG's Restricted Housing Unit ("RHU") under administrative custody pending resolution of the misconduct complaint.

On April 28, 2006, Burgos appeared before Corrections Hearing Examiner Mary Canino at a disciplinary hearing where he was found guilty of misconduct for drug use. He contested the lab results, claiming that they must have produced a false positive. Canino heard Burgos'

2

arguments and provided him the opportunity to have a different test performed on the same urine sample at Burgos' own expense. (Canino Decl. ¶ 4.) On May 10, 2006, the second test results confirmed the presence of marijuana in the sample. (Exs. D9-1, D9-2.)

On May 16, 2006, the disciplinary hearing resumed, during which Canino showed Burgos a copy of the lab report and explained the results.[2] (Canino Decl. ¶ 4.) Canino followed general practices in considering the charge of misconduct, taking into account Burgos' version of the events, the test results, and other findings of fact. (Canino Decl. ¶¶ 9, 10.) Burgos was found guilty and received a sentence of 90 days in the RHU. Burgos appealed the decision to the Program Review Committee (the "Committee"), which included Lieutenant Day, Activities Manager Tony Wolfe, and Administrator Officer Levi Hosband. The Committee reviewed the documentary evidence and denied Burgos' appeal. (Ex. B-2.) On May 25, 2006, Burgos appealed again, this time to Superintendent David DiGuglielmo, who similarly rejected the appeal. Burgos' plea to DiGuglielmo for reconsideration was also denied.

Burgos alleges that while serving his sentence in the RHU, CO Adriano Carrete repeatedly denied him his one hour recreational period.[3] (Burgos Decl. ¶ 3.) Burgos allegedly suffered from

---

[2]Burgos had requested from Canino the lab results of his urinalysis; he contends that Canino refused to respond. (Burgos Decl. ¶ 23.) On May 11, 2006, Canino received a request from Lt. Knauer that she not provide a copy of the lab results to Burgos for security reasons. (Canino Decl. ¶ 7.) The request explained that inmates have been known to forge the results on lab reports, thus posing a security risk. (Knauer Decl. ¶ 14.) Canino did not provide Burgos with the lab results.

[3]Carrete disputes these allegations. He recalls that Burgos went to yard often. (Carrete Decl. ¶ 3.) Furthermore, even if Burgos was denied yard access on days that Carrete was working, Carrete asserts he still would have been permitted to go to yard on 17 days during his stay in the RHU. (Carrete Decl. ¶ 6.)

fatigue, headaches and weight loss as a result of lack of physical exercise and fresh air. (Burgos Decl. ¶ 8.) Moreover, Burgos contends that Carrete tampered with and contaminated his meals. (Burgos Decl. ¶ 7.) Burgos refused to eat meals delivered by Carrete and as a result, suffered weight loss and fatigue. Burgos then attempted to file an administrative grievance against Carrete which Carrete allegedly confiscated and destroyed.

On June 22, 2006, Burgos received a court order from the Third Circuit Court of Appeals concerning his criminal charges. The order specified a deadline for Burgos to file a motion for reconsideration. Burgos alleges that Lieutenant Smith denied him access to the RHU's law library. He also claims that the resources in the law library fell below the standard mandated by the Supreme Court. Burgos contends that inadequate resources and access to the library resulted in his inability to file a timely motion for reconsideration, leading to procedural default on his criminal appeal.

On July 2, 2006, CO Kyungkuk Cho arrived at Burgos' cell and ordered him to pack another inmate's property. Burgos refused to comply, believing the request to be in violation of prison policy.[4] (Burgos Decl. ¶ 47.) Burgos alleges that Cho became angry at his refusal, opened the cell door, and began to yell at him in a "demeaning and humiliating" manner. (Id.) Cho allegedly then ordered Burgos to strip his clothing and submit to a search. (Id.) However, Cho never performed the search because he was interrupted by a disturbance from other prisoners. Cho allegedly threatened to issue a misconduct report against Burgos for failing to follow orders, but Cho never followed through. (Cho Decl. ¶ 6.) Burgos filed a grievance about this incident.

---

[4]Burgos believes prison policy requires that a correctional officer inventory an inmate's property. (Burgos Decl. ¶ 47.)

(Ex. D19-1.) The incident occurred on Cho's first day working in the RHU. He claims that he had never previously encountered Burgos nor did he know anything about him when they met on July 2. (Cho Decl. ¶ 3.)

On July 17, 2006, the L-Block of the RHU flooded, including Burgos' cell. In order to stop the flooding, prison staff cut off water flow to the affected cells. Burgos alleges that CO Michael Baratta refused to restore running water to his cell for two days after everyone else's water was turned back on. (Burgos Decl. ¶13.) Consequently, Burgos asserts that he was unable wash his face, brush his teeth, and flush the toilet, among other things. Furthermore, Burgos alleges that officers denied his requests for cleaning supplies for six days, forcing him to endure a bad odor and unsanitary conditions.[5]

Burgos claims that the above-described actions were taken in retaliation and intended to punish him for his involvement in filing grievances against prison officials. He believes all defendants conspired to restrict his constitutional rights. The defendants deny any knowledge of Burgos filing complaints or his assistance to other inmates. On June 13, 2006, Burgos commenced this action against the defendants alleging the violation of his constitutional rights under the First Amendment (retaliation and access to courts), Fourth Amendment (unreasonable intrusion), Fifth Amendment (Takings Clause), Eighth Amendment (cruel and unusual punishment), and the Fourteenth Amendment (due process and equal protection). Burgos

---

[5]Prison staff claimed to be unaware of any persistent unsanitary conditions. (Carrete Decl. ¶ 15.) Baratta asserts that Burgos neither complained that his water was not turned back on nor did he request cleaning supplies. (Baratta Decl.¶¶ 8, 9.) On July 21, four days after the flood, Lt. Doyle claims that he observed all cells had running water and the cells had been cleaned. (Doyle Decl.¶ 10.) Doyle did not report any sewage smell. (Doyle Decl.¶ 10.)

amended the complaint on September 18, 2006.  On December 21, 2007, defendants

DiGuglielmo, Canino, Hosband, Wolfe, Day, Cuddeback, and Carrete filed a Motion for

Summary Judgment or in the Alternative a Motion to Dismiss (Doc. #69); similarly, defendants

Davies, Doyle, Cho, and Barrata filed a Motion for Summary Judgment or in the Alternative a

Motion to Dismiss on December 3, 2008 (Doc. #109) which incorporates by reference the

previously filed motion for summary judgment  (Doc. #69).[6]


## II. LEGAL STANDARD

The defendants seek relief under Federal Rules of Civil Procedure 56 which provides that

a court must grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. Pro. 56(c).  Facts are "material" when they might affect the outcome

of the case, and a "genuine issue" exists when the evidence would allow a reasonable jury to

return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52

(1986).  The moving party "is entitled to judgment as a matter of law" when the non-moving party

fails to make an adequate showing on an essential element for which he has the burden of proof at

trial.  See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999).  To overcome a

motion for summary judgment, the non-moving party "may not rely merely on allegations or

---

[6]Banta and Godlewski were removed as defendants on March 12, 2008.  Smith still has not filed any motion For the purposes of this motion, "all defendants" shall refer collectively to all defendants who have moved for summary judgment.

denials" but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro.

56(e).  Although a court may only consider "facts that would be admissible in evidence," id.,

parties do not have to "produce evidence in a form that would be admissible at trial," Celotex

Corp. v. Catrett, 477 U.S. 317, 324 (1986).


### III. DISCUSSION

Burgos' Amended Complaint (the "Complaint") makes the following claims: (1) violation

of 42 U.S.C. § 1983 for adverse and retaliatory action against Burgos for his exercise of

constitutionally protected rights; (2) violation of 42 U.S.C. § 1985(2) & (3) for obstruction of

justice and intimidation of witnesses because of Burgos' involvement as a material witness in the

civil action of another inmate; (3) violation of 42 U.S.C. § 1983 for conspiracy as to all named

defendants for acting in retaliation for Burgos' involvement in court-related matters; (4) violation

of the Eighth Amendment for indifference to Burgos' well-being, health, safety, and emotional

state as well as cruel and unusual punishment; (5) violation of the First Amendment for limiting

access to the RHU's law library and lack of meaningful legal assistance for Burgos' criminal

appeal and habeas corpus petitions; (6) violation of the Fourth Amendment for unreasonable

intrusion as a result of an investigative urine sample taken under threat of disciplinary action; (7)

violation of the Fifth Amendment for lack of compensation for the government's taking of private

genetic property (urine) put to public use; and (8) violation of procedural and substantive due

process.

I address each of Burgos' claims in turn below.

*I. Retaliation* - Burgos v. All Defendants

Burgos alleges that all defendants, as Department of Corrections officials, individually and as part of a larger conspiracy, retaliated against him for his active involvement in the exercise of his constitutionally protected right to petition the government for redress of grievances. Retaliation for exercising a constitutionally protected right creates an actionable claim under § 1983.[7] Anderson v. Davila, 125 F.3d 148, 162 (3d Cir. 1997).

For Burgos to maintain his claim for retaliation under § 1983, he must show "(1) constitutionally protected conduct; (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights'; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F. Ed 523, 530 (3d Cir. 2003) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). If a prisoner sufficiently establishes a causal connection, prison officials may "overcome this element by demonstrating that the same action would have been taken in the absence of the protected activity. Rauser v. Horn, 241 F. 3d 330, 333-334 (3d. Cir. 2001).

(1) Constitutionally Protected Conduct

Under the First and Fourteenth Amendments, prisoner-plaintiffs have the right to petition the government for redress of grievances and to freely access the courts. Milhouse v. Carlson, 652 F.2d 371, 373-374 (3d Cir. 1981). In the past, Burgos filed grievances against defendants

---

[7]To establish a violation under 42 U.S.C. § 1983, the plaintiff must demonstrate that (1) the challenged conduct was committed by a person acting under color of state law; and (2) that the conduct deprived him of the rights, privileges, and immunities secured by the Constitution or laws of the United States. 42 U.S.C, § 1983. There is no issue that corrections officers are acting under color of state law. See Purifory v. Wade, No. 90-2352, 1990 WL 102884, at *1 (E.D. Pa. July 17, 1990).

Carrete, Cho, Barrata, and Canino.  Burgos identifies his filing of grievances as the basis for the

retaliation against him with regards to all defendants; therefore, the first element of his retaliation

claim is satisfied.

      (2) Adverse Action by a Prison Official

      To establish the second element, a prisoner-plaintiff must show an adverse action by a

prison official sufficient to deter a person of ordinary firmness from exercising his constitutional

rights.  The plaintiff does not necessarily need to allege that the adverse action violated a

constitutional right, Wheeler v. Beard, No. 03-4826, 2005 WL 1840159, at *3 (E.D. Pa. Aug. 3,

2005); rather, the plaintiff need only show that the adverse action was "motivated in substantial

part by a desire to punish an individual for the [exercise] of a constitutional right." Mitchell, 318

F.3d at 530.  The rejection or denial of grievances does not, by itself, suggest that the action was

adverse or retaliatory.  See Alexander v. Forr, No. 04-0370, 2006 WL 2796412, at *9 (Sept. 27,

2006).  Moreover, any use of words, including threatening or offensive language, does not

constitute retaliatory action.  See Maclean v. Secor, 876 F. Supp 695, 698-699 (E.D. Pa. 1995).

See also Fischer v. Transue, No. 04-2756, 2008 WL 3981521, at *8 (Aug. 22, 2008).  I now

determine with respect to each defendant, whether adverse action was taken sufficient to deter a

person of ordinary firmness from exercising his constitutional rights.

      a. Davies

      Burgos alleges that Davies retaliated against him by requiring him to submit to urinalysis

testing and threatening to issue him a misconduct report if he refused to comply.  The use of

verbal threats does not constitute adverse action.  Burgos was subjected to a urinalysis based on

policies generally acceptable to the entire prison population.  Being forced to give a urine sample

on one occasion is not an adverse action sufficient to deter a person of ordinary firmness. Furthermore, Burgos has not submitted any evidence that Davies intended to punish Burgos by requesting a urine sample. The evidence shows that Davies was responding to a report of marijuana smell and was following orders. Other inmates were also tested–Burgos was not singled out. Burgos fails to present sufficient evidence of an adverse action regarding Davies; therefore, I grant summary judgment for Davies on the count of retaliation.

        b. Lieutenant M. Doyle

Burgos alleges that Doyle, as the Lieutenant in charge of the RHU on L-Block, denied or delayed several grievances filed by Burgos in retaliation for his exercise of his constitutional rights. Doyle was aware of at least two grievances filed by Burgos because he was responsible for responding to them. (Exs. D22-2, D22-3.) According to the grievance records, it appears that these grievances were investigated and found to be unsubstantiated, or actions were taken by supervisory officials to rectify the situation. (Doyle Decl. ¶¶ 8, 9) The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. See Alexander, No. 04-0370, 2006 WL 2796412, at *9. I, therefore, grant summary judgment for Lt. Doyle on count I, retaliation.

        c. Barrata

Burgos alleges that after his cell flooded, he asked Barrata to provide cleaning supplies and to restore running water to his cell, but that Barrata denied the request. (Burgos Decl. ¶¶ 6, 7.) Barrata denies that Burgos made such requests. (Barrata Decl. ¶¶ 8, 9.) However, even if the allegations are true that Burgos did not have running water or cleaning supplies for a few days or even weeks, temporary inconveniences caused by an emergency situation within the prison (e.g., a

flood) do not rise to the level of an adverse action sufficient to deter a person of ordinary firmness

from exercising his constitutional rights.[8]  I grant Barrata's motion for summary judgment on

count I for retaliation.

        d.  Cho

Burgos alleges that Cho ordered him to pack up another inmate's property, contrary to

prison policy.  When Burgos refused, Burgos alleges that Cho yelled at him, thus demeaning and

humiliating him.  He further alleges that Cho ordered him to submit to a strip search; however,

Cho never actually completed the search.  Burgos also claims that Cho threatened to issue a

misconduct report for failing to obey orders.  Burgos speculates that the threat was to "warn [him]

not to complain."  (Burgos Compl. ¶ 47.)  As described above, threats and offensive language do

not constitute an actionable adverse action under § 1983.  <u>See</u> <u>Maclean</u>, 876 F. Supp at 698-699.

Furthermore, Cho did not follow through with his threat of a strip search;[9] and did not ultimately

file the threatened misconduct report.  An unfulfilled threat to file a misconduct report does not

constitute an adverse action in these circumstances.  Therefore, I grant Cho's motion for summary

judgment on the count of retaliation.

---

[8]The evidence submitted indicates that inmates receive cleaning supplies generally once a week
in order to clean their cells; they may receive additional supplies only if conditions warrant.
(Doyle Decl. ¶ 3.)

[9]Even if Cho had followed through with the strip search, such a search is generally acceptable
under prison policy and it serves the legitimate penological interest of ensuring prisoners are not
hiding contraband in their clothing.  Cho was an officer in training at the time of the incident and
perhaps he was unaware of the general prison practice to have more than one officer present at
the time of a strip search.  Cho declares a legitimate purpose for the threat of a search under the
circumstances.  (Cho Decl. ¶ 10.)

e. Carrete

Burgos alleges that Carrete "from inception treated [him] adversely." (Burgos Decl. ¶¶ 3, 5.) Specifically, Burgos claims that Carrete denied him a one hour recreation period, tampered with his food, intercepted his incoming and outgoing mail,[10] prevented him from subscribing to the newspaper, and generally threatened and harassed him. (Burgos Compl. ¶ 34.)

Burgos presents no evidence to support the claim that Carrete denied him an exercise period. In fact, the evidence shows that Burgos got access to the yard on at least 17 occasions between May 9, 2006 and his return to the general population on July 25, 2006. (Carrete Decl. ¶ 6.) Burgos has no constitutional right to access the yard as often as he desires. Occasional lack of exercise does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

Similarly, Burgos relies on the affidavit of a fellow inmate as evidence that Carrete tampered with his food. (Collins Aff. ¶ 12.) Evidence of a single incident of food tampering is insufficient as an adverse action. See Boulware v. Hill, No. 98-3876, 2000 WL 1593989, at *2 (E.D. Pa. Oct. 24, 2000) (holding no adverse action where an inmate found a mouse in his food on a single occasion and claimed it was put there on purpose as retaliation). Likewise, Burgos has no claim with respect to Carrete denying him a newspaper subscription. Evidence shows that Burgos had a newspaper subscription for both May and July. (Rosso Decl. ¶ 2.) Cash slips for newspaper subscriptions are due before the end of each month; late orders are not accepted. (Rosso Decl. ¶ 4.) Burgos submitted his cash slip too late to renew his subscription for June. (Ex. D28.) Even if

---

[10]Burgos presents no evidence of Carrete intercepting his mail; he does not mention the issue again after the Complaint.

Carrete had actually destroyed the cash slip, it produced no ill effect on Burgos because the late

cash slip would not have been accepted anyway.  Regarding Carrete's general threats and

harassment, Burgos cannot prevail.  As previously described, the use of words, including threats

and verbal harassment, does not constitute an actionable adverse action.  See Maclean, 876 F.

Supp at 698-699.  Therefore, Carrete's motion for summary judgment on count I for retaliation is

granted.

　　　　　　　f. Canino

Burgos alleges that Canino was biased against him because of his previous involvement in

a lawsuit in 2002.  (Ex. D30-1.)  He claims that she retaliated against him by intentionally

withholding his urine test results during his disciplinary hearing, refusing to fully investigate

whether prison policies for urinalysis testing were followed when his sample was taken, and

ultimately finding him guilty of the misconduct.  Finding an inmate guilty of misconduct, standing

alone, does not constitute adverse action.  With respect to the allegation that she intentionally

withheld his test results, there is no evidence of that Canino was motivated by a desire to punish

Burgos by withholding the results; Canino was merely following an order from Lt. Knauer.

Furthermore, the evidence shows that Canino based her disciplinary decision on substantial

evidence in accordance with general prison policies.  There is no evidence that her decision was

motivated by any animus for Burgos.  Canino's motion for summary judgment is granted as to

count I of retaliation.

　　　　　　　g. Hosband, Wolfe, Day, and DiGuglielmo

Burgos alleges that Hosband, Wolfe, and Day of the Program Review Committee, and

Superintendent DiGuglielmo, retaliated against him for his involvement in a prior lawsuit by

denying Burgos' appeals regarding the misconduct report issued on April 27, 2006 for drug use. Burgos claims that the committee members based their decision on a hearing record that did not include facts that would support his claim that the investigative urinalysis was unlawful and he contends that Supt. DiGuglielmo upheld the disciplinary sanction based upon false information.

The evidence shows that Hosband, Day, and Wolfe followed general committee policies when reviewing Burgos' appeal by reviewing each case based upon paperwork, without interviewing the inmate. (Wolfe Decl. ¶ 3, Day Decl. ¶ 3.) Committee members came to a unanimous decision in considering Burgos' appeal after following prison policy in reviewing the case.[11] (Wolfe Decl. ¶ 3.) The denial of an appeal, standing alone, does not constitute an adverse action, particularly when based upon substantial documentary evidence. Burgos presents insufficient evidence to survive summary judgment; therefore, I grant the motion for summary judgment for Hosband, Wolfe, Day, and DiGuglielmo on count I of retaliation.

h. Cuddeback

Burgos does not include any specific allegations against Cuddeback of an adverse action, but rather includes him generally as a defendant. Burgos conceded that he has no claim against Cuddeback. (Burgos Dep. 25:4-8.) The motion for summary judgment on count I of retaliation against Cuddeback is granted.

*II. Intimidating a Witness and Obstruction of Justice* - Burgos v. Canino, DiGuglielmo Hosband, Day & Davies

---

[11]Only a majority is necessary to render a decision. (Wolfe Decl. ¶ 3.)

14

The Complaint asserts that defendants violated 42 U.S.C. §§ 1985(2) & (3) and 1986 for intimidation of a witness, obstruction of justice, and neglecting to prevent a conspiracy. Burgos claims that the defendants intimidated him in an attempt to discourage him from participating as a witness in the civil action of another inmate and, in doing so, obstructed justice.

a. Section 1985(2)

Section 1985(2) has two main components: intimidating a witness and obstruction of justice. To make out a claim under § 1985(2), a plaintiff must allege one of the statute's two bases for recovery: (1) "a conspiracy to deter by force, intimidation, or threat, any party or witness in any court in the United States from attending such court, or from testifying in any matter pending therein"; or (2) "a conspiracy with the purpose of impeding, hindering, or obstructing, or defeating in any manner, the due course of any justice in any State or Territory, with intent to deny any citizen the equal protection of the laws." 42 U.S.C. § 1985(2). Burgos asserts claims under both parts of the statute.

i. Intimidating a Witness

The essential elements of a § 1985(2) claim of witness intimidation are: "(1) a conspiracy between two or more persons; (2) to deter a witness by force, intimidation, or threat, from attending court or testifying freely in any pending matter; (3) which results in injury to the plaintiff." Malley-Duff & Assocs. v. Crown Life Ins. Co., 792 F.2d 341, 356 (3d Cir. 1986). It is not necessary that the witness actually be deterred from testifying. Higgs v. Prezioso, No.06-5815, 2007 WL 1521118, at *9 (May 18, 2007) (quoting Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994)).

15

Burgos alleges that Canino, DiGuglielmo, Hosband, Day, and Davies acted to intimidate him as a witness, however, he alleges no specific action by any defendant that constitutes witness intimidation. Furthermore, Burgos concedes that he was never a witness in any civil litigation. (Burgos Dep. 9:1-9, October 30, 2007.) The motion for summary judgment for witness intimidation under §1985(2) against Canino, DiGuglielmo, Hosband, Day, and Davies is granted.

### ii. Obstruction of Justice

The second half of § 1985(2) guards against obstructions of justice "in any State or Territory" which seek to deny another of the equal protection of the laws. 42 U.S.C. § 1985(2). "The language requiring intent to deprive of equal protection indicates that there must be some racial, or perhaps otherwise class-based discriminatory animus behind the conspirators' action." Kush v. Rutledge, 460 U.S. 719, 726 (1983). Thus, to establish a claim for obstruction of justice under the latter part of §1985(2), a plaintiff must allege a "class-based, invidiously discriminatory animus." Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976).

Burgos alleges that defendants conspired to injure and intimidate him because of his race. As the sole support for his allegation, Burgos describes in the Complaint a single incident involving Carrete's use of a racially derogatory term against another inmate. Burgos offers no other evidence of class-based, invidiously discriminatory animus except for his own conjecture regarding Carrete's motivations. The single incident described in this case, which is ascribed to defendant Carrete, is insufficient to show that defendants Canino, DiGuglielmo, Hosband, Day, and Davies had any discriminatory animus. Therefore, I grant the motion for summary judgment for obstruction of justice under §1985(2) is granted in favor of Canino, DiGuglielmo, Hosband, Day, and Davies.

b.   Section 1985(3)

Section § 1985(3) prohibits actions taken by two or more persons "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).  To establish a claim under § 1985(3), a plaintiff must show "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person, property, or the deprivation of any right." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.1997).

Burgos' claim fails on the first element.  He presents no proof beyond his own allegations regarding a conspiracy among defendants.  Burgos cannot presume to know what defendants were thinking and he has no evidence to support his allegation that defendants were motivated by race or class to deprive him of the equal protection of the law.  Furthermore, Burgos does not offer evidence of an animus on the part of the defendants against blacks in general, rather than against the plaintiff as an individual.  Therefore, I grant the defendants' summary judgment motion for conspiracy to interfere with plaintiff's civil rights under § 1985(3).

c.   Section 1986

Likewise, this count alleging a violation under § 1986 cannot survive the motion for summary judgment.  Section 1986 is a companion to § 1985(3) which "provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980).  Because § 1986 claims depend on a underlying violation of § 1985, "if the claimant does not set forth a cause of

17

action under the latter, its claim under the former must fail also." Id.   Because there is no

conspiracy claim under § 1985(3), the defendants' motion for summary judgment under § 1986

for neglecting to prevent a conspiracy is granted.


   *III. Conspiracy* - Burgos v. All Defendants

   Burgos alleges that prison officials conspired to retaliate against him for the exercise of his

constitutional rights in violation on § 1983.  In order to demonstrate the existence of a conspiracy

under § 1983, the "prisoner has to show, inter alia, that the conspirators reached an agreement to

deprive him of a constitutional right under color of law." Parkway Garage, Inc. V. City of

Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993).

   As discussed above, Burgos fails to present sufficient evidence that would have satisfied

the agreement requirement for conspiracy.  The sole evidence Burgos provides to show an

agreement is Lt. Knauer's request to Canino not to disclose Burgos' lab reports for security

reasons, with which Canino complied.  Burgos does not have a constitutional right to his lab

results, and Canino's compliance with this request, which was based on security concerns, does

not constitute an agreement to deprive another of his constitutional rights. As for the remaining

defendants, Burgos merely offers unsubstantiated allegations of conspiracy that cannot be

corroborated by any concrete evidence of an agreement between defendants.  Burgos concedes

that he never observed any of the witnesses discussing with each other any of the issues he raised.

(Burgos Dep. 33:2-7.) The defendants' motion for summary judgment on count III of conspiracy

is granted.

*IV. Indifference to Plaintiff's Well-being, Health, Safety, and Emotional state & Cruel and*

*Unusual Punishment* - Burgos v. Carrete, Cho, Smith, and Doyle

To establish a claim for an Eighth Amendment violation under § 1983, a plaintiff must show (1) the deprivations sustained by the prisoner are sufficiently serious under an objective standard; and (2) prison officials acted with deliberate, subjective indifference to the prisoner's health or safety. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Therefore, only those deprivations denying the "minimal civilized measure of life's necessities," including food, shelter, water, safety, sanitary conditions, and medical treatment, qualify as sufficiently grave to form the basis of an Eighth Amendment violation. Rhodes, 452 U.S. at 346.

The Eighth Amendment imposes duties on prison officials to provide humane living conditions within the prison. Hudson v. Palmer, 468 U.S. 517, 526-7 (1984). To the extent that the plaintiff alleges discomfort, however, he does not satisfy the requirements for a claim of cruel and unusual punishment. The plaintiff must allege a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825, 837 (1994), or must produce evidence of how the unsanitary "condition jeopardized or potentially jeopardized his health or caused it to be unfit for habitation." Tinsley v. Vaughn, No. 90-0113, 1991 WL 95323, at *6 (E.D. Pa. May 29, 1991). "Temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief." Ford v. Bd. of Managers of New Jersey State Prison, 407 F.2d 937, 940 (3d Cir. 1969).

The subjective component of this analysis requires that the defendants acted with "deliberate indifference." Deliberate indifference is often equated with a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835. Liability for deliberate indifference exists only

where the plaintiff can demonstrate that prison officials knew of the alleged cruel and unusual conditions and acted with deliberate indifference, or failed to act (if a duty is owed), to a substantial risk of harm to inmate health.  Id.

Prisons are harsh institutions and, at times, extremely dangerous.  Particularly in dealing with emergency situations, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices" necessary to maintain institutional security and internal discipline.  Bell v. Wolfish, 441 U.S. 520, 547 (1979).

a. Exercise

Burgos alleges that Carrete continually denied him an exercise period in violation of his Eighth Amendment rights while he was confined in the RHU.  Under appropriate circumstances, the deprivation of exercise may amount to a constitutional violation; however, an inmate's success on such a claim "depends heavily on the length of his confinement, the period of the deprivation, and the likelihood of harm."  Tinsley, No. 90-0113, 1991 WL 95323, at *4.  Within the RHU, a prisoner-plaintiff may be deprived of certain privileges he would have enjoyed as part of general population; the denial of such privileges usually does not amount to cruel and unusual punishment.  Bauer v. Sielaff, 372 F. Supp. 1104, 1110 (E.D.Pa. 1974).  Prison officials are not required to allow an exercise period if made impossible by disciplinary needs.  Tinsley, No. 90-0113, 1991 WL 95323, at *4.

Burgos' confinement in RHU was neither long-term (it was less than three months), nor was he deprived of his recreational time for a continuous period.  Carrete produces evidence that Burgos was permitted to go to the yard at least eighteen times during his incarceration in RHU.  (Carrete Decl. ¶ 6.)  Occasional denial of an exercise period does not rise to the level of an Eighth

Amendment violation; therefore, Carrete's motion for summary judgment for violation of the Eighth Amendment is granted.

b. Unsanitary Conditions and Running Water

Burgos alleges that Doyle and Carrete deliberately refused to turn on the water to his cell for two days after the flood of L-Block in the RHU.  Although it appears that Burgos was deprived of basic necessities, including water and sanitary conditions, for a short period, the emergency flooding situation that precipitated the temporary deprivation called for such action so that officials could restore internal order to the institution.  It is beyond the scope of the judiciary to judge the discretionary actions of prison officials in dealing with an emergency.  Bell, 441 U.S. at 547.  Furthermore, Burgos demonstrates no evidence that he suffered substantial injury as a result of the deprivation, as required by Farmer.  511 U.S. at 837.  There is no case precedent awarding a prisoner judicial relief under the Eighth Amendment for having to temporarily endure a bad odor.  While certainly uncomfortable, such minor inconveniences cannot be grounds for judicial relief.

Therefore, I grant the motion for summary judgment for violations of deliberate indifference and cruel and unusual punishment against Doyle and Carrete under the Eighth Amendment.

c. Emotional harm

Burgos alleges that Cho cause him emotional harm in violation of the Eighth Amendment when he yelled at Burgos in a humiliating and demeaning manner for refusing to follow orders.  As stated previously, harsh words do not rise to the level of a constitutional violation nor does

21

Burgos offer evidence that he suffered substantial emotional harm as a result of Cho's conduct.  I grant Cho's motion for summary judgment for violation of the Eighth Amendment.

### V. First Amendment - Burgos v. Banta & Smith

Burgos makes this First Amendment claim for denial of access to the courts against Unit Manager Banta and Lt. Smith.  On March 12, 2008, Banta was dismissed as a defendant.  It appears that Smith has not joined the motion for summary judgment.  Evidence shows that Burgos had access to the law library on July 6 and July 10 for two hours each time.  (Ex. D18-2.) Furthermore, the length of the docket in this case clearly demonstrates that Burgos maintained a continual and thorough capability of accessing the courts.  This claim fails as a matter of law.

### VI. Fourth Amendment - Unreasonable Intrusion - Burgos v. Davies, Canino, Hosband, Wolfe, Day & DiGuglielmo

Burgos alleges that Davies forcibly required him to submit a urine sample for an unlawful, non-random urinalysis.  He further alleges that Canino used the results of the unlawful urinalysis to find him guilty of misconduct and sentence him to 90 days in the RHU.  Burgos contends that Hosband, Wolfe, Day and DiGuglielmo sustained the disciplinary sanctions based on the urinalysis results and other false information.

The Fourth Amendment protects citizens against *unreasonable* searches and seizures. Because there is no precise test of reasonableness, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it was conducted."  Bell, 441 U.S. at 559.  Prison officials may, at times, limit the

constitutional rights of inmates in order to maintain institutional security. Id. at 545-546. For this reason, courts must grant wide deference to prison officials regarding prison policies and practices needed to preserve internal order and discipline and to maintain institutional security. Id. at 547. Thus, regulations that abridge an inmate's constitutional rights are valid if they are reasonably related to legitimate penological interests. Lewis v. Casey, 518 U.S. 343, 361 (1996). Particularly, in the prison context, investigative drug testing should be considered reasonable as long as there is any basis of justification. "Urine testing furthers a legitimate government interest of rehabilitating prisoners and enforcing the law;" therefore, "it is not unreasonable intrusion of the plaintiff's privacy rights." Hadden v. Jacobs, No. 90-0759, 1990 WL 26677, at *1 (E.D. Pa. March 12, 1990).

In this case, Davies collected the plaintiff's urine as part of a larger investigation into drug use in response to a prison official reporting the smell of marijuana around Burgos' cell. This is a reasonable justification for compelling a urine sample under Bell. Therefore, Burgos fails to state a claim of unreasonable intrusion under the Fourth Amendment.

Related to this claim, Burgos also alleges a state law claim that Davies forced him to enter into a contract with Sterling. Burgos claims that the contract inaccurately represented his interests because it states that the urine sample was "given" when Burgos alleges it was "forced." Furthermore, he asserts that the contract failed to disclose that the results would be used for disciplinary proceedings. These allegations have no basis in law. Because prison drug testing is fully acceptable under the Fourth Amendment, I find that the state law claim has no merit. Therefore, I grant the defendants' motion for summary judgment for violation of state contract law.

*VII. Fifth Amendment* - Burgos v. Davies, Canino, Hosband, Wolfe, Day & DiGuglielmo

Burgos claims that he is owed just compensation from the government for taking his urine for a prison drug test. It is unclear in the complaint against which defendants this claim is made. Because I previously concluded that prison policies requiring drug testing serve a legitimate penological interest and are acceptable under the Fourth Amendment, I similarly conclude that no compensation is required for urine submitted for the purpose of drug testing. I grant the motion for summary judgment for violation of the Fifth Amendment's Takings Clause.

*VIII. Substantive/Procedural Due Process & Equal Protection* - Burgos v. All Defendants

Burgos alleges generally that his due process rights were violated by all defendants because of his confinement in RHU. He claims that he was disciplined as a result of unlawful drug testing and false lab results in violation of his rights to due process. Burgos only mentions specifically Canino, Hosband, Day, Wolfe, & DiGuglielmo in this count of his complaint; for the purpose of assessing this claim, I will consider the claim against only those defendants. I grant summary judgment for the remaining defendants Doyle, Cho, Barrata, Carrete, and Davies.

Prisoners are entitled to the protections of the Due Process Clause of the Fourteenth Amendment. "Procedural due process claims encompass challenges to the constitutional adequacy of state law procedural protections as they relate to the constitutionally protected interest in life, liberty and property." Laudenberger v. Sciotti, No. 99-4155, 2000 WL 1130092, at *6 (E.D. Pa. Aug. 9, 2000).

a. Procedural Due Process

24

Prison conditions deprive an inmate of a protected liberty interest where the discipline at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). To determine an "atypical and significant" hardship, the court must consider "what a sentenced inmate may reasonably expect to encounter as a result of his conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (holding that an inmate's placement in segregated housing at SCIG for a period of 15 months did not constitute "atypical and significant").

Due process requires that before an inmate may be deprived of a liberty interest, he must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with the institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary evidence." Superintendent, Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 454 (1985). However, it does not "give a prisoner a liberty interest in remaining among the general prison population." Montayne v. Haymes, 427 U.S. 236, 242 (1976). Moreover, a prisoner cannot make out a due process violation merely because he is dissatisfied with the results of the proceedings. See Gordon v. Vaughn, No. 99-1511, 1999 WL 305240, at *4 (E.D. Pa. May 12, 1999).

Burgos alleges that receiving 90-day sentence to the RHU for misconduct violated his due process rights. Burgos' 90-day disciplinary sanction in the RHU, of which he served 83 days, cannot suffice as an "atypical or significant" hardship, particularly when the Third Circuit has held that a 15-month confinement is acceptable. Furthermore, evidence shows that Burgos was afforded due process prior to his disciplinary sanction. He was provided with the charges during

the first hearing and allowed time to complete a re-test of the urine sample and develop his case. Although Canino did not provide a copy of the lab report because of prison security concerns, she read him the results of the urinalysis test and made him aware of the evidence against him. (Canino Decl. ¶ 4.)  Burgos was given the opportunity to defend himself and also to appeal the decision.  Canino based her decision on convincing evidence, i.e. two urinalysis lab reports indicating THC in Burgos' urine.  I find that Burgos received due process.  He cannot prevail on a procedural due process claim simply because he received unfavorable responses to his misconduct charges and subsequent appeals.  I, therefore, grant the motion for summary judgment for violation of due process.

b. Substantive Due Process

Burgos also alleges a violation of his right to substantive due process.  "Substantive due process encompasses challenges to the unreasonable and arbitrary actions of the state or state actors." Laudenberger, No. 99-4155, 2000 WL 1130092, at *17.  The Supreme Court mandates that "if a constitutional claim is covered by a specific constitutional provision, it must be analyzed under the standard appropriate to that specific provision" instead of as a substantive due process claim.  County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).  Burgos has not specifically stated a substantive due process claim; any claim even resembling a substantive due process claim has already been analyzed under a different constitutional provision.  I, therefore, grant summary judgment for all defendants on the substantive due process claim.

c. Equal Protection

Burgos alleges that he was "treated differently and worse than similarly situated inmates" but fails to include any specifics relating to the claim.  He presents no evidence against any

particular defendant regarding how he was denied equal protection under the law.  Because Burgos states only a broad and ambiguous claim and provides no evidence, the defendants' motion for summary judgment for violations of equal protection under the Fourteenth Amendment is granted.


## IV. CONCLUSION

Burgos submits eight federal claims and one state law claim.  After evaluating the evidence submitted by the parties and drawing all reasonable inferences in the plaintiff's favor, I find that there is no genuine issue of material fact for trial on any count.  Summary judgment is granted for defendants DiGuglielmo, Canino, Hosband, Wolfe, Day, Cuddeback, Carrete, Davies, Doyle, Cho and Barrata on each count.

_____
ANITA B. BRODY, J.

7/20/09

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

C:\Documents and Settings\ABB-Int1\Desktop\Burgos v. Canino -- MTD and SJ opinion.wpd